UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WILLIAM PAYNE,

    Applicant,

v.                                                      CASE NO. 8:15-cv-1267-T-23JSS

SECRETARY, Department of Corrections,

    Respondent.
                                                  /

## **O R D E R**

William Payne applies for the writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 1) and challenges the validity of his state convictions for trespassing, possessing burglary tools, and criminal mischief, for which convictions Payne serves ten years imprisonment.[1] In ground four of his application Payne contends that his trial counsel rendered ineffective assistance by not investigating Payne's competency before trial despite Payne's request for a mental health evaluation. Payne claims that he has a long history of mental illness and was incompetent to stand trial. Payne asserts that he told his counsel before the trial that Dr. Henry Dee had evaluated him in an earlier and unrelated case and had concluded that Payne suffered from severe mental disorders and was not competent to stand trial. Payne claims that at the time of his trial in the

---

[1] Because this order discusses other state prosecutions, the state court judgment challenged in this habeas action is designated as "the trespass case."

trespass case he lacked the "present ability to consult with his lawyer with a reasonable degree of rational understanding and a rational, as well as factual, understanding of the proceedings against him." (Doc. 1, p. 11) Payne asserts that a pre-trial mental health evaluation would have resulted in a finding of incompetence to stand trial in the trespass case.

**<u>Background</u>**

In December 2007 — approximately eighteen months before the trial in the trespass case — Dr. Henry Dee evaluated Payne for competency in a separate and unrelated criminal case (the "2007 case"). Dr. Dee opined that, although Payne was "factually competent," Payne was "realistically not competent." (Doc. 2, Ex. D, p. 10) Dr. Dee reported that Payne "harbor[ed] a delusion . . . that his attorney is in some sort of conspiracy with the State to send him to prison." Dr. Dee suggested that "one must try treatment with antipsychotic medications in an attempt to *restore* [Payne] to competency" and concluded that Payne met the criteria for involuntary commitment.[2] (Doc. 2, Ex. D, p. 10 and addendum) (italics added)

In June 2009 a jury convicted Payne in the trespass case. At that time, Payne faced charges in a separate criminal case (number 08-7105). During his sentencing in the trespass case Payne pleaded guilty to the charges in case number 08-7105. (Respondent's Exhibit 1a, transcript of August 26, 2009, sentencing hearing,

---

[2] Despite Dr. Dee's findings, Payne was deemed competent in the 2007 case, proceeded to trial, and was acquitted of all charges.

- 2 -

p. 21–27) After Payne testified during the plea colloquy that he had a history of mental illness, the judge deferred sentencing in case number 08-7105 so that the judge could review Dr. Dee's report. Payne later moved to mitigate his sentence in the trespass case. (Respondent's Exhibit 1a, p. 213) At a hearing on the motion the judge ordered Payne evaluated for competency. Two court-appointed psychologists, Dr. Henley and Dr. Hartig, opined that Payne was incompetent to proceed in case number 08-7105 but could not determine whether Payne had been incompetent to stand trial in the trespass case. At a later hearing the judge (1) rejected Payne's motion to mitigate sentence in the trespass case and found that Payne had presented no proof that he was incompetent to proceed to trial in the trespass case but (2) concluded that Payne was incompetent to stand trial in case number 08-7105.[3] (Respondent's Exhibit 1a, transcript of February 19, 2010, hearing, p. 67) The state appellate court affirmed Payne's convictions and sentences in the trespass case.

**Rule 3.850 proceeding**

Payne challenged his convictions and sentences in the trespass case in a state Rule 3.850 motion for post-conviction relief and alleged that his trial counsel rendered ineffective assistance by not investigating or inquiring before trial about Payne's competency. The state post-conviction court afforded Payne an evidentiary hearing on ineffective assistance of counsel. At the hearing both Payne and trial counsel testified.

---

[3] The state ultimately *nolle prossed* the charges in case number 08-7105.

Payne testified that he has suffered from paranoid schizophrenia since he "was about 11 or 12 in foster care." Payne testified that he takes medication for schizophrenia but was not medicated at the time of trial. According to Payne, when he is not medicated he "begin[s] to hear things and see things, there are voices talking to me and sometimes they yell at me and they tell me different things. They tell me people are plotting against me . . . [and] . . . not to trust people." (Respondent's Exhibit 6, transcript of May 31, 2013, hearing p. 9) Payne testified that at the time of trial he heard voices that told him his counsel was both trying to "trick" him and plotting against him. (Respondent's Exhibit 6, transcript of May 31, 2013, hearing, p. 10)

The state post-conviction court denied this ground as follows (Respondent's Exhibit 6a, Final Order Denying Motion for Post-Conviction Relief, pp. 1–4):

> When competency issues are raised, "the focus of the prejudice inquiry is on actual prejudice, whether, because of counsel's deficient performance, the defendant's substantive due process right not to be tried while incompetent was violated. In order to establish prejudice, the defendant must set forth clear and convincing circumstances that create a real, substantial and legitimate doubt as to the movant's competency." *Thompson v. State*, 88 So. 3d 312, 319 (Fla. 4th DCA 2012). The question becomes "whether the defendant has sufficient present ability to consult with counsel with a reasonable degree of rational understanding and whether the defendant has a rational, as well as factual, understanding of the pending proceedings. Fla. R. Crim. P. 3.211 (a)(1).
>
> As to the first prong of *Strickland*, the Court finds that there was deficient performance on the part of trial counsel. The client conference notes of trial counsel were introduced at the evidentiary hearing. As early as November 11, 2008, [counsel] referenced a possible mental health evaluation for case CF08-007105, but not for the above-cited case. For

unexplained reasons, Defendant[4] did not think that the
mental health evaluation needed to include this case.[1] At that
attorney-client conference, counsel also noted that Defendant
has seen Dr. Dee for a mental health evaluation and that after
discussions with trial counsel about Dr. Dee, the defendant
would be okay seeing a different doctor this time around. On
April 7, 2009, counsel's client conference notes indicate that she
intended to complete a mental health evaluation in this case and
there is a note reminding her to obtain Dr. Dee's evaluation of
Defendant and to get his application to Peace River.[2] Counsel
also noted in her case file notes that she would bring Defendant
two releases of information so that she could obtain his medical
records including records from Dr. Dee.[3] On June 4, 2009,
counsel again references Dr. Dee and his report, and obtaining
medical release forms in her case file notes. This meeting appears
to be a follow up to the letter written by Defendant which was
filed on May 28, 2009. In that letter, the Defendant mentions that
counsel has failed to send him medical releases.

> 1. During her testimony [counsel] stated that
> mental health issues can be a defense strategy. The
> Court disagrees but is mindful of that position of
> trial counsel in how this case was handled.
>
> 2. The Court would note that it is concerned with
> [counsel]'s candidness and complete truthfulness
> before the Court. In a hearing conducted on
> August 26, 2009, [counsel] told the Court that "I
> don't know of any report, Judge. I'm not aware of

---

[4] Counsel testified at the evidentiary hearing that her case file includes notations from a November 2008 jail visit with Payne (Respondent's Exhibit 6, transcript of May 31, 2013, evidentiary hearing, pp. 54–55):

> Q: And during the visit, did you at any point notate that the defendant wanted the mental health evaluation?
>
> A: In two places. . . . The first says, defendant says mental health evaluation does not need to include this case; and the second one says, defendant wants mental health evaluation, has been at — it looks like — CSU and had seen Dr. Dee, note defendant's interviews — interview form from when he was interviewed by investigator when we were first appointed, shows never treated for mental health problems. And then the next notation, I discussed Dr. Dee with defendant, saw Dee long ago, agreed to see different doctor.

- 5 -

> one." Defendant had to tell the Court that Dr. Dee had previously evaluated him. Counsel then told the Court, "I don't have a report from Dr. Dee in any of my files." [Counsel]'s assertion is in direct contradiction to her pretrial notes contained in her file.
>
> 3. Defendant wrote a letter on May 26, 2009, to the Court indicating that his counsel had not brought him the releases. As of July 10, 2009, counsel is still writing in her notes that she needs to obtain medical records.

The report written by Dr. Dee submitted to the Court in January 2008 in [the 2007 case] . . ., which concluded with a jury trial and acquittal only months before Defendant was arrested in this new case, indicated that the Defendant should be involuntarily committed so that treatment with antipsychotic medications could be tried in an effort to restore Defendant to competence. The defendant in that case was also represented by the Public Defender. This report by Dr. Dee was contained in the Public Defender's file and could have easily been obtained by [counsel] within her office. Counsel testified at the evidentiary hearing that if she had had this report, she would have requested a mental health evaluation. However, counsel was aware of the report and did not retrieve it from her office[']s file. The Court can think of no strategic reason for not investigating Defendant's competency when Defendant repeatedly mentioned having mental health problems and the trial counsel discussed getting an evaluation in one case in which she represented him, but not the other. Defendant even testified that he told counsel that there was a report that found him incompetent and Defendant wanted to know why he was found to be such. It would have been easy enough for trial counsel to retrieve Dr. Dee's report from the office files, and request a mental health evaluation. Counsel's performance was grossly deficient and deceptive to the Court.

The Court does not find the Defendant to be prejudiced. In December 2007, Dr. Dee evaluated the Defendant's competency in [the 2007] case . . . upon the motion of the assistant public defender. His report with the two page clarification is admitted in evidence at this hearing. Dr. Dee determined the Defendant to be factually competent to proceed but realistically not competent. Defendant understood the nature of his charges, the role of the

various participants, and could explain the facts surrounding his case. However, Defendant also believed that his counsel was conspiring with the State to send him to prison. The trial judge found him competent and he was acquitted at trial.

In December 2009, both Dr. Hartig and Dr. Henley evaluated the Defendant's competency after the issue was raised at the 26 August sentencing hearing. Dr. Hartig determined that the Defendant could appreciate his charges and the range and nature of the possible penalties, could manifest appropriate courtroom behavior and testify relevantly. The only issue Dr. Hartig had was that the Defendant did not seem to understand the adversary nature of the system and did not have the capacity to disclose pertinent facts to his attorney as he believed she was conspiring against him. The only unacceptable criteria Dr. Henley found was that the Defendant did not have the ability to work with his attorney as he thought she was plotting against him. These are both consistent with Dr. Dee's conclusions.

Obviously the Court does not have an evaluation for the time period right before the trial at issue in this motion due to the deficiency in counsel's performance. However, the Court has reviewed the record, transcripts and recorded proceedings of the three cases cited above. During the case at issue, it does appear that the Defendant was trying to work with counsel. Defendant would send letters to [counsel] indicating a desire to review the transcripts and case law.[5] He even contacted other assistant public defenders in the office to get certain things accomplished. From trial counsel's notes, it appears that the Defendant was forthcoming in his communication with counsel and several discussions were had on the mental health issue alone. During a hearing held in CF08-7105 on January 23, 2009 on a motion to suppress, Defendant became a witness and was questioned by counsel and the trial judge, and not only answered appropriately and coherently, but he was cooperative with counsel.[4] At no point in the instant case did the Defendant file a Motion to Dismiss trial counsel and bring to the Court's attention any issues the Defendant was having with counsel's performance.[5] Defendant even participated in jury selection. All of this belies

---

[5] Payne testified at the evidentiary hearing that another inmate helped him to both write the letter and prepare a diagram for counsel to review after the inmate "read all my stuff" in exchange for Payne giving him food. (Respondent's Exhibit 6, transcript of May 31, 2013, evidentiary hearing, pp. 15–25)

- 7 -

> the notion that he thought his counsel was conspiring with the State to send him to prison.
>
> > 4. The Court has attached to this order a transcript and a CD of the electronic recording of those proceedings as the transcript fails to convey the demeanor, voice inflection, responsiveness, and spontaneity of the defendant in his testimony.
> >
> > 5. Defendant did file a Motion to Dismiss Counsel in [the 2007 case] and was successful. Regional counsel was then appointed to represent the Defendant in that case. Defendant was aware of the procedure to bring to the Court's attention a dissatisfaction with counsel and did not do so in the present case.
>
> The Court does not find that there is real, substantial and legitimate doubt concerning the Defendant's competency at the time of the trial in this case.

*Strickland v. Washington*, 466 U.S. 668, 697 (1984), governs an ineffective assistance of counsel claim and requires proof of both deficient performance and consequent prejudice. As the state post-conviction court concluded, Payne satisfies the deficient performance requirement. To establish prejudice, Payne "must show that 'there was a reasonable probability that he would have received a competency hearing <u>and</u> been found incompetent had counsel requested the hearing.'" *Pompee v. Sec'y, Fla. Dep't of Corr.*, 736 F. App'x 819, 824 (11th Cir. 2018)[6] (quoting *Lawrence v. Sec'y, Fla. Dep't of Corr.*, 700 F.3d 464, 479 (11th Cir. 2012) (emphasis in original)). The record suggests that Payne might satisfy *Strickland's* prejudice requirement.

---

[6] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. Rule 36-2.

The state post-conviction court's order denying Payne's ground of ineffective assistance of counsel fails to acknowledge that Payne told the judge at the sentencing hearing that he "went to Peace River to try to get my medication . . . [b]ut I caught these other charges . . . before I could get the treatment I was trying to get." (Respondent's Exhibit 1a, transcript of August 26, 2009, sentencing hearing, p. 24) The state post-conviction court's order also does not acknowledge that only six months after his sentencing in the trespass case, both Dr. Henley and Dr. Hartig found Payne incompetent. Dr. Hartig's conclusion was based in part on Payne's school records and jail records from 2008 while Payne was awaiting trial in the trespass case. According to Dr. Hartig, the jail records "[d]idn't indicate that [Payne] had any treatment in 2009 . . . [b]ut in 2008 he was expressing paranoid delusions." (Respondent's Exhibit 1a, transcript of February 19, 2010, competency hearing, p. 37)

The record suggests that (1) Payne might satisfy *Strickland's* prejudice requirement and (2) the state post-conviction court's conclusion that Payne suffered no prejudice from trial counsel's deficient performance is unreasonable under 28 U.S.C.§ 2254(d). After considering all aspects of this action, the district court determines that appointing counsel to represent Payne is necessary for resolution of this ground of ineffective assistance of counsel.

Accordingly, this action is referred to the Magistrate Judge for the limited purpose of appointing counsel to represent Payne. This action is **ADMINISTRATIVELY CLOSED AND STAYED** until briefing is complete.

Counsel for Payne has until **TUESDAY, JULY 2, 2019**, to file a supplemental pleading addressing only the merits of ground four, with specific discussion on: (1) the application of AEDPA deference, (2) whether the state post-conviction court's determination that Payne suffered no prejudice as a result of counsel's deficient performance is unreasonable under 28 U.S.C. § 2254(d), and (3) whether Payne is entitled to *de novo* review of the merits of ground four. The respondent must respond to Payne's supplemental pleading within twenty-eight days and Payne may reply within twenty-one days.

ORDERED in Tampa, Florida, on April 4, 2019.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE